IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| GANISHER ESHBOBOEVICH ESHDAVLATOV, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 6:25-cv-00844-MDH ) |
| JIM ARNOTT, Greene County Missouri Sheriff; CHRISTOPHER CHAMBERLIN, Acting Assistant Field Officer Director for the Kansas City Field Office; MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations; TODD M. LYONS, Acting Director, Immigration Customs Enforcement; KRISTI NOEM, Secretary of Homeland Security; and PAM BONDI, Attorney General of the United States, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Petitioner's Emergency Petition for Writ of Habeas Corpus. (Doc. 1).[1] This Court ordered Respondents to show cause why the Petition for Writ of Habeas Corpus should not be granted (Doc. 21) and Respondents subsequently filed a response to that Order. (Doc. 26). The Court additionally gave Petitioner three days to file a reply addressing the response. Petitioner filed a reply. (Doc. 27). The motion is now ripe for adjudication on the merits. For the reasons stated herein, the Court finds that Petitioner's Emergency Petition for Writ of Habeas Corpus should be **GRANTED**.

---

[1] Plaintiff subsequently filed a First Amended Petition for Writ of Habeas Corpus. The changes made were to the parties and did not change the substance of the original Emergency Petition for Writ of Habeas Corpus. As such, the Court considers Plaintiff's First Amended Petition for Writ of Habeas Corpus as alleging the same facts and arguments.

1

## BACKGROUND

Petitioner is a citizen of Uzbekistan who entered the United States without inspection on or about November 27, 2023, and has filed an I-589 application for asylum and withholding of removal on December 5, 2023, which remains pending. On October 13, 2025, Petitioner was detained without a warrant in Aurora, Illinois as he was driving to work with his wife. Petitioner was not detained pursuant to any criminal wrongdoing or infractions but simply by virtue of his status as an alien. Petitioner has been in Department of Homeland Security ("DHS") custody since and is currently being held in the Greene County Jail in Springfield, Missouri.

Petitioner would like to be considered for release on bond. However, any request for such consideration is futile because the DHS and the Executive Office of Immigration Review ("EIOR") have taken the position that Petitioner's detention is mandatory and bond is categorically not permitted. Further, in September 2025, the Board of Immigration Appeals ("BIA") held that a person in Petitioner's circumstances is not entitled to consideration for release on bond. *See Matter of Yajure Hurtado*, 29&N Dec. 206 (BIA 2025).

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) Jim Arnott, the Greene County Sheriff,[2] (2) Chrisotpher Chamberlin, Acting Assistant Field Office Director for the Kansas City Field Office, (3) Todd M. Lyons, Acting Director of Immigration and Customs Enforcement, (4) Madison Sheahan, Acting Deputy Director of Immigration and Customs Enforcement, (5) Kristi Noem, Secretary of the Department of

---

[2] Petitioner's Amended Complaint lists Sheriff Arnott as a party by virtue of his administration of the Greene County Jail where Petitioner is currently detained. While Sheriff Arnott was not served in this case as of the date of this Order, the Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Greene County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

Homeland Security, and (6) Pamela Bondi Attorney General of the United States, all in their official capacities. Petitioner asserts the Immigration and Nationality Act ("INA"), Administrative Procedure Act ("APA"), and the Due Process Clause entitle him to the opportunity to seek release on bond. Respondents argue that Petitioner is not entitled to be considered for release. The Court will take these arguments in turn.

## STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus … extents to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The Petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, he must satisfy his burden of proof by a preponderance of the evidence." *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (quoting *McDonald v. Feeley*, 535 F. Supp. 3d 1238, 135 (W.D.N.Y. 2021)) (cleaned up).

## ANALYSIS

I. **Jurisdiction**

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), (g) and (b)(9)––deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

3

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." Such judicial review is to commence in the Court of Appeals. 8 U.S.C. § 1252(b)(2). However, § 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Department of Homeland Sec. v. Regents of the Univ. of CA*, 591 U.S. 1, 19 (2020); *see also Jennings v. Rodriguez*, 583 U.S. 281, 293–94 (2018). Petitioner in this case does not bring one of these challenges that would deprive this Court of jurisdiction. Therefore, 8 U.S.C. § 1252(b)(9) does not deprive the Court of jurisdiction.[3]

Section 1252(g) provides that no court has jurisdiction under any statutory provision, including 28 U.S.C. § 2241, "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ." Similarly to § 1252(b)(9), this provision is "narrow," as the review preclusion is specifically limited to review of decisions to commence or adjudicate cases or execute removal orders. *Department of Homeland Sec. v. Regents of the Univ. of CA*, 591 U.S. 1, 19 (2020). Petitioner is not challenging any of these decisions or actions, so § 1252(g) does not deprive the Court of jurisdiction.

---

[3] The argument Respondents make have been brought in district courts around the country and an overwhelming majority has found that jurisdiction exists. As of the date of this Order the Court is not aware of any that have been appealed nor are there any appellate decisions. The Court however will highlight cases from District Courts in this Circuit as supporting the analysis in this case: Barrajas v. Noem, 2025 WL 2717650, at *3 (S.D. Iowa Sep. 23, 2025); Giron Reyes v. Lyons, 2025 WL 2712427, at *4 (N.D. Iowa Sept. 23, 2025); Jose J.O.E. v. Bondi, 2025 WL 2466670, at *6-7 (D. Minn. Aug. 27, 2025).

Section 1252(e)(3) provides that judicial review of orders under section 1225(b) and its implementation are only available in an action instituted in the United States District Court for the District of Columbia and shall be limited to determinations of constitutionality or whether such a regulation or policy issued by or under the authority of the Attorney General to implement such section is not consistent with applicable provisions of this subchapter or its otherwise in violation of law. 8 U.S.C. § 1252(e)(3). This statute only bars jurisdiction based on those held under 8 U.S.C. § 1225. However, for reasons that will be discussed below, the Court finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of Jurisdiction. Whereas 8 U.S.C. §§ 1252(b)(9), (g) and (e)(3) do not deprive this Court of jurisdiction, the Court finds this case is properly before it.

## II. The INA

Respondents argue that 8 U.S.C. § 1225 applies to Petitioner in this case and thus he is ineligible for release on bond. Whereas Petitioner argues that 8 U.S.C. § 1226 applies and thus he is eligible for release on bond. To determine the appropriate governing statute, this Court must first start with the statutes' plain language. "[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." *Durbin v. United States*, 599 U.S. 110, 120–21 (2023). Finally, "when deciding whether the language is plain, [the Court] must read the words in their context and with a view to their place in the overall statutory scheme" because the objective is "to construe statues, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015).

Petitioner argues that his situation is governed by § 1226, which is entitled "Apprehension and detention of aliens" and provides that "an alien may be arrested and detained pending a

5

decision on whether that alien is to be removed from the United States." 8 U.S.C. § 1226(a). Except for aliens described in § 1226(c) (which consist of those who committed various crimes and does not apply to Petitioner's circumstances), the Attorney General may detain the alien or release him or her on bond. *Id*. § 1226(a)(1), (2). Here, Petitioner is an alien who has been arrested pending a decision regarding whether he is to be removed, as described in § 1226(a).

Respondents argue however that § 1225, and specifically § 1225(b)(2), applies to Petitioner. Respondents' reasoning starts with § 1225(a)(1), which provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." Thus, according to Respondents, by operation of law, Petitioner was deemed an "applicant for admission" and "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to . . . the United States" are to be "inspected by immigration officers." *Id*. § 1225(a)(3).

The inspection called for by § 1225(a) is discussed further in § 1225(b). Section 1225(b)(1) applies to aliens who are inadmissible for specific reasons, such as "fraud, misrepresentation, or lack of valid documentation." *Jennings v. Rodriguez,* 583 U.S. 281, at 288 (2018) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader in that it applies to aliens who are not addressed in § 1225(b)(1). However, § 1225(b)(2) seems to be narrower, in that it directs that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" he or she shall be detained. 8 U.S.C. § 1225(b)(2)(A).

As discussed above, Respondents argue that Plaintiff is deemed an "applicant for admission" pursuant to § 1225(a)(1); they then contend he must therefore also be deemed to have been "seeking admission" within the meaning of § 1225(b)(2)(A). However, this is not what the

statute's text provides. Congress specified that the mandatory detention provision of § 1225(b)(2)(A) applies to hose "seeking admission" and did not use the phrase "applicant for admission" that it defined previously in § 1225(a)(1).

> In other words, Congress could have drafted § 1225(b)(2)(A) to provide that "if the examining immigration officer determines that an applicant for admission is not clearly and beyond a doubt entitled to be admitted he or she shall be detained"— but it did not. And here, while Petitioner may be an applicant for admission, he was never seeking admission, so § 1225(b)(2)(A) and its provision for mandatory detention do not apply. Had Congress intended for this subsection to apply to all applicants for admission, it could have said so by simply replacing the phrase "an alien seeking admission" with the term "an applicant for admission;" or to be even more succinct, it could have replaced the phrase "an alien seeking admission" with the word "alien." Under either of these constructions, it would be clear that "applicant for admission" means the same thing as "alien seeking admission," which is Respondents' interpretation of the statute. But this is not the language that Congress chose.

*J.A.M v. Streeval*, 2025 WL 3050094, at *2 (M.D. Ga. Nov. 1, 2025). Respondent's interpretation would "completely ignore, or even read out, the term 'seeking' from 'seeking admission." The term 'seeking' implies action. Thus, Respondents' interpretation is not supported by the text.

Respondents contend Petitioner's interpretation creates a "rule that treated an alien who enters the country illegally . . . more favorably than an alien detained after arriving at a [Port of Entry] would 'create a perverse incentive to enter at an unlawful rather than a lawful location.'" (Doc. 26, page 24) (citing *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024)). But as discussed earlier, if this was Congress's concern, it would have simply declared that all "applicants for admission" must be detained. Instead, § 1225(b)(2) provides that a subset of applicants, those actually seeking admission, are to be detained. It is not the Court's prerogative to rewrite statues in order to effectuate Congress's perceived objectives.

Further, Respondents' interpretation is inconsistent with recent amendments to § 1226. In 2025, Congress passed the Laken Riley Act, which added §1226(c)(1)(E) and requires detention

7

of aliens who are inadmissible pursuant to § 1182(a)(6)(A), (D), or (E). But under the Respondent's interpretation of these provisions, such aliens are already subject to mandatory detention under § 1225(b)(2), which means the 2025 amendments to § 1226 have no purpose. "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Moreover, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 297 (1995). Given a choice between Respondent's interpretation (which would render the 2025 amendment superfluous) and Petitioner's interpretation (which would give the amendment purpose), Petitioner's interpretation is preferred.

Finally, Respondents point to the BIA's decision in *Matter of Yajure Hurtado*, 29 &N Dec. 216 (BIA 2025), which relies heavily on the conclusion that an "applicant for admission" under § 1225(a) is automatically "seeking admission" under § 1225(b)(2). However, the BIA's decision is not entitled to deference for a variety of reasons, including (1) the issue involves interpretation of statutes, not the exercise of agency discretion, and (2) the decision is contrary to the agency's long-standing practice and interpretation of the statutes. *Loper Bright Enters v. Raimondo*, 603 U.S. 369, 385–88 (2024). For the reasons stated, the Court finds that Respondents position is not substantially justified and that Petitioner detainment is one under 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

### III.     Administrative Procedure Act

As discussed above, the Court concludes that it has jurisdiction over Petitioner's habeas claim regarding the lawfulness of his current detention. Further, the Court grants the petition on

the merits of Petitioner's claims to the extent he seeks (1) a declaration that he is not subject to detention under 8 U.S.C. § 1225(b)(2) and is instead detained pursuant to 1226(a)(1); and (2) an order requiring that he be provided a bond hearing. Because that is the appropriate habeas relief available under 28 U.S.C. § 2241, the Court finds it unnecessary to engage in extended analysis of the remaining claims in the petition at this time, including any request for relief under the APA. See *Belsai D.S. v. Bondi*, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *3 (D. Minn. Oct. 1, 2025)

IV. The Due Process Clause

Petitioner alleges that he "has a fundamental interest in liberty and being free from official restraint. (Doc. 25, page 10). However, his arguments on this point rely on his interpretation of the INA. Therefore, the Court's conclusion that the § 1226 grants Petitioner the right to a bond hearing is sufficient to provide due process and there is no need to independently discuss the Due Process Clause.[4]

V. Temporary Restraining Order

Petitioner asks this Court for a Temporary Restraining Order ("TRO") enjoining the Respondents from relocating him outside the jurisdiction of this Court pending final resolution of his case. Respondents do not make an argument as to this claim.

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties;

---

[4] The Court has significant initial concerns that Respondents detention policies violate due process constitutional rights. However, it is the Court's position that the relief Petitioner seeks can be granted without an adjudication of Petitioner's rights at this juncture.

and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987).

The Court finds that a TRO in this case is appropriate. As discussed above, the Court has already found that movant will succeed on his Petition for Habeus Coprus by virtue of his INA argument that has been fully briefed by both parties. Further, the threat of irreparable harm to the movant absent injunction is high as any move from this district prior to a bond hearing would render this Order and Petitioner right to a bond hearing as meaningless. As to the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested parties, the balance tips in favor of Petitioner. Respondents and other interested parties would not suffer by allowing Petitioner to have a bond hearing. Lastly, there is a public interest in allowing those who are detained pursuant to 8 U.S.C. § 1226 to be given a bond hearing as expressed and determined by Congress. For these reasons, the Court finds Petitioner's request for a TRO is appropriate.

## VI.     Equal Access to Justice Act Attorney Fees

Petitioner requests an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C. § 504. As the Court did not address the merits of the APA claim, fees are not available under 5 U.S.C. §504.

Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a

10

petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified based on statutory interpretations, historical interpretations and enforcement of immigration laws, legislative history and enactments. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## CONCLUSION

For the reasons stated, the Court concludes Petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1225, and that he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to either release Petitioner or grant him a bond hearing within ten (10) days of this Order. Further, Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court. Petitioner shall report to the Court any failure or deviation of Respondents from this Order. It is

**FURTHER ORDERED** that Petitioner may file a motion for an award of attorneys' fees and costs under the Equal Access to Justice Act within thirty (30) days of this Order.

**IT IS SO ORDERED**.

DATED: November 18, 2025

                                                  */s/ Douglas Harpool*
                                                  **DOUGLAS HARPOOL**
                                                  **UNITED STATES DISTRICT JUDGE**